# FOURTH DIVISION
## DOYLE, P. J.,
## ANDREWS and BOGGS, JJ.

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/**

**June 20, 2012**

# In the Court of Appeals of Georgia

A12A0446. CARTWRIGHT v. FIRST BAPTIST CHURCH OF DO-019 R KEYSVILLE, INC.

DOYLE, Presiding Judge.

Maggie C. Cartwright sued First Baptist Church of Keysville, Inc. ("the Church")[1], seeking title to two tracts of real property occupied by the Church under theories of implied and express trust. Following a trial, a jury rendered a verdict in favor of Cartwright, but based on evidence of a prior quia timet action vesting fee simple title in the Church, the trial court granted the Church a judgment notwithstanding the verdict ("jnov"). Cartwright filed this appeal contending that the

---

[1] The Church was originally named Stancey Nocia Baptist Church and later became First Baptist Church of Keysville and was incorporated thereafter in 1997. For purposes of this opinion, we refer to the party and its predecessors as the Church.

prior action did not have a res judicata effect on this proceeding. Finding no error, we affirm.

The record shows that prior to 1907, the disputed property was owned by Cartwright's grandfather, Robert Cheatham, who was the pastor of the Church, which began operating on the property. Cheatham allegedly gave or sold part of his parcel to the Church, but after his death, a question arose as to whether the deed, which had become lost, was properly recorded. So in 1976, Cartwright, as Cheatham's heir, executed a deed conveying a fee simple interest in favor of the Church, and she was told that if the Church stopped operating on that property, the land would revert back to her family. Thereafter, in 1993, Cartwright again executed a deed conveying to the Church a fee simple interest in additional property along the boundary of her property to accommodate a Church annex. She made this transfer with the same understanding that the property would revert to her should the property no longer be used by the Church.

In 1997, a dispute arose over the boundary line between Cartwright and the Church, so the Church filed a quia timet action pursuant to OCGA § 23-3-60 et seq. ("Quiet Title Act") with respect to the tracts transferred by Cartwright. Cartwright was served with the petition, and in 1998 the trial court ultimately entered an order

pursuant to the Act finding that fee simple title vested in the Church and establishing the boundary line pursuant to an agreement between the Church and Cartwright.

After further doctrinal and personnel disputes between the Church and Cartwright, the Church dismissed her as a member in 2006. By 2009, the Church had moved its operations to a different property located in Hephzibah, Georgia, and Cartwright brought the instant action seeking title to the Church property. Based on implied and express trust theories, a jury rendered a verdict in favor of Cartwright , but the trial court entered a judgment notwithstanding the verdict in light of the 1998 order entered in the quia timet action, which order was produced on the final day of trial.[2] Cartwright now appeals.

Cartwright contends that the trial court erred by concluding that the quia timet order had a res judicata effect in her later action seeking to impress a trust upon the property. She argues that the 1998 order could not have settled a controversy that arose only when the Church later sought to move its operations from its former site to the Hephzibah site. Nevertheless, this position misapprehends the nature of the quia timet action.

---

[2] The trial court's order notes that counsel for both parties were apparently unaware of the existence of the 1998 order until the final day of trial.

OCGA § 23-3-61, which authorized the quia timet action, provides as follows:

Any person, which term shall include a corporation, partnership, or other association, who claims an estate of freehold present or future . . . , whether in the actual and peaceable possession thereof or not and whether the land is vacant or not, may bring a proceeding in rem against all the world to establish his title to the land and to determine all adverse claims thereto or to remove any particular cloud or clouds upon his title to the land, . . . which proceeding may be against all persons known or unknown who claim or might claim adversely to him, whether or not the petition discloses any known or possible claimants.

The purpose of this Code section

is to create a procedure for removing any cloud upon the title to land, . . . *and for readily and conclusively establishing that certain named persons are the owners of all the interests in land defined by a decree* entered in such proceeding, *so that there shall be no occasion for land in this [S]tate to be unmarketable because of any uncertainty as to the owner of every interest therein.*[3]

Here, the Church's action was brought pursuant to the above Code sections and sought fee simple title to property occupied by the Church and held pursuant to the deeds granted to the Church. The quia timet decree concluded that fee simple title

---

[3] (Emphasis supplied.) OCGA § 23-3-60.

4

vested in the Church and "conclusively establishe[d] the title of [the Church] as set forth in this Decree against all the world." Thus, the decree on its face "conclusively establish[ed] that [the Church is] the owner[] of all the interests in land defined by [the] decree."[4] That the decree specifically addresses the boundary line dispute and historical deed recordation issues does not narrow the scope of the decree or change the nature of the decree. According to the statutory procedure, and by the explicit terms of the decree, the 1998 order settled the title to the land conclusively, not only as to a specific person but as to a specific cloud on the title.

Were we to conclude otherwise, this would frustrate the purpose of the statute, which is to readily and conclusively establish title to land to avoid unmarketability due to uncertainty of ownership.[5] Thus, the statute operates to avoid precisely this scenario in which a person such as Cartwright, who participated in the prior quia timet action, later asserts a new claim to title in a subsequent action. Should the later action succeed, no quiet title action could produce the result intended by the statute.

This conclusion is entirely consistent with res judicata principles: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and

[4] OCGA § 23-3-60.

[5] See id.

5

their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."[6] Under this rule, "[i]t is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases."[7] Thus, even if the parties are now focusing on a different potential defect in the Church's title, the prior quiet title action was sufficient to establish title because the conclusive nature of the Church's title was put in issue, Cartwright participated in the action, and a court of competent jurisdiction rendered a judgment on the merits of the Church's ownership interest in the land.[8]

Cartwright nevertheless argues that her interest could not have been asserted in the prior action because the Church had not ceased operating at the time of the quia timet action. But even if title had not vested in her due to a reversion based on an express or implied trust, she still had standing to assert the allegedly then-existing

---

[6] OCGA § 9-12-40.

[7] (Punctuation omitted.) *Piedmont Cotton Mills v. Woelper*, 269 Ga. 109, 110 (498 SE2d 255) (1998).

[8] See id. ("If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense [of res judicata] is valid.").

express or implied trust that she now claims hinders the marketability of the property. Therefore, the prior quia timet action, which settled the Church's ownership interest in the property, was sufficient to bar Cartwright's present action seeking title to the property. "Recognizing the sometimes impossible task of determining the identity or residence of all possible adverse claimants due to title irregularities spanning many years, the legislature made the [quia timet] proceeding in rem against all the world."[9] Thus, "[a] litigant must discharge all his weapons, and not reserve a part of them for use in a future encounter. He must realize that one defeat will not only terminate the campaign, but end the war."[10]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[9] *Smith v. Ga. Kaolin Co.*, 264 Ga. 755 (1) (449 SE2d 85) (1994).

[10] (Punctuation omitted.) *Piedmont Cotton Mills v. Woelper*, 269 Ga. at 111.